# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Autumn Vista Holdings, LLC, and
Autumn Vista Phase II, LLC,

                    Plaintiffs,

v.

Timbercreek Autumn Vista, L.P.,
and Timbercreek Acquisitions,
Inc.,

                    Defendants.

_____/

Case No. 1:17-cv-03038

Michael L. Brown
United States District Judge

## OPINION & ORDER

Plaintiffs and Counterclaim Defendants Autumn Vista Holdings, LLC, and Autumn Vista Phase II, LLC (collectively "Autumn Vista") seek summary judgment. (Dkt. 42.) Defendants and Counterclaim Plaintiffs Timbercreek Autumn Vista, L.P., and Timbercreek Acquisitions, Inc. (collectively "Timbercreek") also seek summary judgment. (Dkt. 38.) For the reasons below, the Court grants in part and denies in part each motion.

Autumn Vista also seeks to amend the complaint and to set mediation. (Dkts. 35, 62, 70.) Timbercreek seeks to amend the scheduling order. (Dkt. 46.) The Court addresses these motions below.

## I. Background

Autumn Vista sold Timbercreek two properties ("the Property") in Gwinnett County, Georgia, for $27,510,000 in July 2015. (Dkts. 12 ¶ 7; 38-2 ¶¶ 5–7.) Before the sale, Autumn Vista worked with a brokerage company to market the Property and to identify prospective buyers. (Dkts. 38-2 ¶ 8; 38-4 at 6–7.) Autumn Vista compared more than twenty offers, looking at factors such as purchase price, closing timeframe, financing contingencies, and earnest money deposit. (Dkt. 38-4 at 10–11.) After conducting phone interviews with selected prospective buyers, Autumn Vista chose Timbercreek Acquisitions, Inc., and the parties executed a purchase agreement (the "Purchase Agreement"). (Dkts. 38-2 ¶¶ 12–14; 38-4 at 41–42.)

The lawsuit here mainly concerns two sections of the Purchase Agreement, both of which relate to indemnification. The first provision, Section 4.6, states

Except as represented and warranted by [Autumn Vista] pursuant to the terms and provisions of this Agreement, or in any document required to be executed by [Autumn Vista] and delivered to [Timbercreek Acquisitions, Inc.] at Closing, [Timbercreek Acquisitions, Inc.] shall buy the Property in its then condition, "AS IS, WHERE IS," with all faults solely in reliance on [Timbercreek Acquisitions, Inc.]'s own investigation, examination, inspection, analysis, and evaluation.

(Dkt. 38-2 ¶ 17 (alterations in original).)  The second provision, Section 11.4, states

[Timbercreek Acquisitions, Inc.] shall and does protect, defend, indemnify and save [Autumn Vista] harmless for, from and against all Loss imposed upon or asserted against [Autumn Vista] by reason of any accident, injury to or death of person (including workmen) or loss or damage to property occurring on or about the Property arising or accruing on or after the Closing.

(*Id.* ¶ 19 (alternations in original).)

In January 2016, a child living in an apartment on the Property pulled on a stove.  It tipped over, injuring that child and another child.  (Dkt. 2-2 at 6.)  The children sued one of the Timbercreek Autumn Vista entities, one of the Autumn Vista entities, and a property management company.  (*Id.* at 3–14.)  After being served with the tenant lawsuit, Autumn Vista demanded that Timbercreek honor its obligations to indemnify it.  (Dkts. 12 ¶ 12; 40-4 at 8.)  It did so on July 10, 2017.  (Dkts.

24 at 23; 42-3 ¶ 9.)   Timbercreek Autumn Vista answered the suit on behalf of itself and BH Management but did not immediately commit to indemnifying Autumn Vista.  (Dkt. 12 ¶¶ 12–13.)

In early August, Timbercreek's counsel wrote Autumn Vista's counsel, stating he would contact Autumn Vista to discuss the indemnification issues when he "had a chance to review fully the issues raised in your letter." (Dkt. 1-1 at 57.)  Timbercreek's counsel wrote that his "client intends to comply with its obligations as set forth in the Purchase and Sale Agreement and Assignment of Leases." (*Id.*)  The next day Autumn Vista's counsel responded, stating the "issues are not that complex and have been reviewed by too many for too long." (*Id.* at 55.)  He demanded Timbercreek either provide proof of insurance covering losses from the tenant lawsuit or a cash bond of $1,000,000.  (*Id.*)

On August 25, 2017, Sompo International Insurance ("Sompo") offered to defend and indemnify Autumn Vista for the tenant lawsuit on behalf of Timbercreek.  (Dkt. 38-2 ¶ 25.)  Sompo informed Autumn Vista that December that the indemnification insurance includes defense coverage, but not indemnity coverage, for punitive damages.  (*Id.* ¶ 28.)

Autumn Vista's only costs defending the tenant lawsuit are the fees associated with filing an answer, around $19,000. (*Id.* ¶ 33; Dkt. 72.)

Before and concurrent with the tenant lawsuit, Timbercreek tried to sell the property. (Dkt. 24 ¶ 19.) Eduard de Guardiola, an Autumn Vista representative, contacted Timbercreek and offered to repurchase the property. (*Id.* ¶ 22.) Timbercreek declined that offer, kept marketing the property, and found another buyer. (*Id.* ¶¶ 23–26.) Timbercreek and the buyer executed a sales agreement on August 1, 2017. (*Id.* ¶¶ 28–29.)

Four days later, Autumn Vista notified Timbercreek that it was rescinding the 2015 Purchase Agreement because Timbercreek had failed to provide adequate indemnification. (*Id.* ¶¶ 46–48.) Autumn Vista sued Timbercreek on the same day. (Dkt. 1-1.) The third-party buyer terminated the deal for the Property, mostly because of Autumn Vista's demand for rescission. (Dkt. 24 ¶¶ 64–66.) Timbercreek counterclaimed against Autumn Vista for tortious interference with contractual and business relations and for interference with the private enjoyment of its property. (*Id.* ¶¶ 68–115.) Each party has moved for summary judgment and each party also seeks to amend parts of their pleadings.

## II.    Motions for Summary Judgment

### A.    Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party does this by showing "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The movant, however, need not negate the other party's claim. *Id.* at 323. It simply must show a lack of dispute as to a material

fact. In determining whether a movant has done this, the Court views the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

If the movant meets its burden, the nonmovant must show that summary judgment is improper by identifying specific evidence that raise a genuine dispute as to a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, there is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. The court, however, resolves all reasonable doubts in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## B. Analysis

The parties seek summary judgment on whether Timbercreek breached Section 11.4 of the Purchase Agreement; whether that alleged

breach was material; whether Autumn Vista tortiously interfered with a sale or interfered with the enjoyment of the Property; and whether punitive damages are appropriate.

### 1. Breach of the Purchase Agreement

Section 11.4 of the Purchase Agreement requires Timbercreek to indemnify Autumn Vista for losses or damages related to the Property after the sale from Autumn Vista to Timbercreek. Both parties move for summary judgment on whether Timbercreek breached this duty. "A breach occurs if a contracting party repudiates or renounces liability under the contract, fails to perform the engagement as specified in the contract; or does some act that renders performance impossible." *Shiho Seki v. Groupon, Inc.*, 775 S.E.2d 776, 779 (Ga. Ct. App. 2015) (quotation marks and citations omitted). Autumn Vista claims Timbercreek's insurance offer was not adequate performance because it did not cover punitive damages and was untimely. Timbercreek claims it indemnified Autumn Vista in a reasonable time.

Georgia law permits parties to indemnify punitive damages, but to do so, the contract must explicitly cover punitive damages. *See Allstate Ins. Co. v. City of Atlanta,* 415 S.E.2d 308, 309 (Ga. Ct. App. 1992) ("[I]t

is well established in Georgia that contractual indemnities do not extend to losses caused by an indemnitee's own negligence unless the contract expressly states that the negligence of the indemnitee is covered."). The indemnification provisions here do not explicitly cover punitive damages, so the policy does not cover punitive damages.[1]

Autumn Vista makes two other arguments about performance, but both fail. First, Autumn Vista claims Timbercreek has still not indemnified it and thus not performed. Sompo, however, offered Autumn Vista insurance. This offer constituted performance. *See Krieger v. Bonds*, 775 S.E.2d 264, 270 (Ga. Ct. App. 2015) (finding a tender properly made is equivalent to performance). Second, Autumn Vista argues Sompo's offer is not performance because Sompo can cancel the insurance. But the possibility of removing coverage is an argument that

---

[1] Autumn Vista claims *Davis v. Southern Exposition Management Co.*, 503 S.E.2d 649, 652 (Ga. Ct. App. 1998), suggests provisions indemnifying "against any and all claims for any such loss, damage or injury" can include punitive damages. (*See* Dkt. 69 at 4.) The contract in that case, however, specifically addressed conduct covered by the insurance contract, stating the right to indemnification did not apply upon " 'willfull or wanton misconduct' or to damages caused by SEMCO's 'sole negligence.' " *Davis*, 503 S.E.2d at 652.

breach could happen and cannot be the basis for breach now. This hypothetical raises no issue of material fact.

There is, however, an issue of material fact over whether the offer to indemnify was timely. Section 11.4 of the Purchase Agreement has no required time for performance, and so Timbercreek needed to indemnify Autumn Vista in a "reasonable time." *Triple Eagles Assocs., Inc. v. PBK, Inc.*, 704 S.E.2d 189, 195 (Ga. Ct. App. 2010) ("[W]here no definite time is stated for the performance of a contract, the presumption is that the parties intended that performance would be had within a reasonable time . . . .") (quotation marks and citation omitted). "What is a reasonable time is a question of fact in each case, to be decided by the jury." *Parker v. Futures Unlimited, Inc.*, 278 S.E.2d 99, 99 (Ga. Ct. App. 1981).

Autumn Vista informed Timbercreek of the tenant lawsuit on July 10, 2017. (Dkt. 42-3 ¶ 9.) Timbercreek's counsel wrote Autumn Vista's counsel on August 1, 2017, stating that Timbercreek intended to comply with the Purchase Agreement. (Dkt. 1-1 at 57.) And Sompo offered to defend Autumn Vista on August 25, 2017. (Dkt. 38-2 ¶ 25.) There is a question of material fact about whether that was a reasonable time.

For the reasons above, the Court denies each party's motion for summary judgment on breach so that a jury can determine whether Timbercreek timely performed its obligation to indemnify Autumn Vista.

### 2. Materiality of Section 11.4 of the Purchase Agreement

Autumn Vista seeks rescission of the Purchase Agreement based on Timbercreek's alleged failure to indemnify it.

> Generally, one injured by a breach of a contract has the election to rescind or continue under the contract and recover damages for the breach. But to justify rescission, there must be a material nonperformance or breach by the opposing party. If the breach is not material, the party is limited to a claim for damages and cannot rescind the contract.
>
> A breach is material when it is so substantial and fundamental as to defeat the object of the contract. In other words, to trigger the right to rescission, the act failed to be performed must go to the root of the contract. A breach which is incidental and subordinate to the main purpose of the contract does not warrant termination.

*Forsyth Cty. v. Waterscape Servs., LLC*, 694 S.E.2d 102, 111–12 (Ga. Ct. App. 2010) (internal citations and quotation marks omitted). The Purchase Agreement's purpose was to convey land from Autumn Vista to

Timbercreek — the purpose was the sale of land. The Purchase Agreement's recitals show this purpose.[2]

Two other factors show the contract's fundamental purpose was not to indemnify Autumn Vista. First, in searching for a buyer, Autumn Vista compared more than twenty offers on the property, looking at potential buyers' financial health. The parties did not negotiate over Section 11.4. (Dkt. 38-4 at 20–22.) This focus upon finding a financially secure buyer shows Autumn Vista did not enter the Purchase Agreement with the fundamental purpose to indemnify itself. Second, the cost of the breach relative to the contract's value also shows the indemnification provisions were not the contract's fundamental purpose. *Forsyth County v. Waterscape Services, LLC* explains this point. In that case, a construction company agreed to construct a wastewater treatment plant for a county and, after completion, to convey the plant to the county. *See*

---

[2] The purchase recitals state "WHEREAS [TimberCreek Acquisitions, Inc.] desires to acquire the Property from [Autumn Vista] for the purchase price of TWENTY-SEVEN MILLION FIVE HUNDRED TEN THOUSAND AND 00/100 ($27,510,000[.]00) (**'Purchase Price'**) and [Autumn Vista] desires to convey the Property to [Timbercreek Acquisitions, Inc.] all upon the terms and conditions herein set forth[.]" (Dkt. 1-1 at 16.)

694 S.E.2d at 111–12.  The county refused to pay a change order, a clear breach of the contract, and the company sought to rescind the contract. *See id.*  The court found this breach immaterial because it did not defeat the contract's fundamental purpose — to build a wastewater plant.  In its reasoning, the court compared the price of the breach to the total price of the deal, $265,267 versus $11,000,000.  The court found this amount, around 2% of the contract, "was not so substantial and fundamental as to defeat the object of the [agreement]." *Id.* at 113 (alteration in original) (quotation marks and citation omitted).  The percentage here is even smaller:  Autumn Vista sold the Property for $27,510,000 and the cost of the alleged breach, consisting of legal fees, is around $19,000.  Like *Waterscape*, this cost is not substantial or fundamental, and does not defeat the agreement's purpose.

Autumn Vista seeks to distinguish *Waterscape* in two ways, neither effective.  First, Autumn Vista argues the construction company did not rescind the contract because the construction company waived its right to rescission.  Autumn Vista is incorrect.  The construction company did waive a contractual right to rescind the contract, but that court's finding

also required finding that the breach, the failure to pay the change order, was not material. *See id.* at 112.

Second, Autumn Vista argues the party seeking rescission in *Waterscape* did not allege that the breach prevented it from fulfilling the contract's purpose. And in contrast, here, Autumn Vista would not have entered into the Purchase Agreement without Sections 4.6 and 11.4. The standard for materiality, however, is "defeat the object of the contract," not "necessary to enter contract." *See id.* at 111–12. Plaintiffs cite no case law to support this different understanding of materiality.

For the reasons above, the Court holds there was no material breach and grants Timbercreek summary judgment on material breach of the Purchase Agreement so as to allow recession.

### 3. Tortious Interference with the Sale of the Property from Timbercreek to a Third Party

Timbercreek claims Autumn Vista tortiously interfered with a sale of the Property between Timbercreek and a third party. Timbercreek argues Autumn Vista "used the Tenant Lawsuit as an opportunity to engage in abusive and unlawful business tactics to reacquire the Property." (Dkt. 24 ¶ 73.) Tortious interference claims require a plaintiff to show the defendant (1) acted improperly and without privilege;

(2) purposefully and with malice and with intent to injure; (3) induced a third party not to enter or continue a business relationship with the plaintiff; and (4) the tortious conduct proximately damaged the plaintiff. *Tom's Amusement Co. v. Total Vending Servs.*, 533 S.E.2d 413, 416; *Dalton Diversified, Inc. v. AmSouth Bank*, 605 S.E.2d 892, 897–98 (Ga. Ct. App. 2004).

The tortious interference claims rely on the current lawsuit and Autumn Vista's threat to sue. These tortious interference claims cannot by law rely on the current lawsuit because of the court filings privilege. *See Phillips v. MacDougald*, 464 S.E.2d 390, 395 (Ga. Ct. App. 1995) ("[W]e hold that, as a matter of law, a claim for tortious interference with contractual relations cannot be predicated upon an allegedly improper filing of a lawsuit.") (internal citation and quotation marks omitted). Timbercreek argues that courts have found "improper action or wrongful conduct" supporting a tortious interference claim includes "abusive civil suits." *Tanisha Sys. v. Chandra*, No. 1:15-cv-2644, 2015 WL 10550967, at *4 (N.D. Ga. Dec. 4, 2015); *Kirkland v. Tamplin*, 645 S.E.2d 653, 656 (Ga. Ct. App. 2007); *Sommers Co. v. Moore*, 621 S.E.2d 789, 791 (Ga. Ct. App. 2005). These cases reference "abusive civil suits" in dicta, and this

Court has found no Georgia case allowing a tortious interference claim based on the filing of a lawsuit, abusive or otherwise. And, at any rate, no evidence suggests the current lawsuit constitutes "abusive" litigation.

Nor can Timbercreek rely on Autumn Vista's threat to sue. Autumn Vista acknowledges it told Timbercreek it would sue if Timbercreek did not rescind the contract. (Dkt. 44 at 5.) This notice was Autumn Vista's attempt to enforce what it believed were its contractual rights. This cannot support a claim for tortious interference. *See Exec. Excellence, LLC v. Martin Bros. Invs., LLC*, 710 S.E.2d 169, 174 (Ga. Ct. App. 2011) (finding statements asserting party intended to pursue enforcement of contract will not support action for slander of title to real property). Because the current lawsuit cannot be the basis of a tortious interference claim and the alleged threat to sue was Autumn Vista enforcing its contractual rights, Timbercreek does not have a basis for its tortious interference claims. The Court grants Autumn Vista summary judgment on this issue.

### 4. Interference with Enjoyment of Property

Timbercreek claims Autumn Vista interfered with its right to the enjoyment of property when Autumn Vista sued for rescission, causing a

*lis pendens* on the Property. Timbercreek's claim, however, relies on the present lawsuit and the threat to sue. The present lawsuit cannot be the basis of an interference with enjoyment of property claim. *See Phillips*, 464 S.E.2d at 395. The Court thus grants Autumn Vista summary judgment on this issue.

### 5. Punitive Damages

Timbercreek seeks punitive damages. In Georgia, courts cannot award punitive damages when no actual damages are awarded. *See* GA. CODE ANN. 51-12-5.1; *Williams v. Jet One Jets, Inc.* 755 F. Supp. 2d 1281, 1290 (N.D. Ga. 2010) ("Punitive damages under O.C.G.A. § 51-12-5.1 cannot be awarded where no actual damages are awarded.") (alternations and citations omitted). Since the Court grants Autumn Vista summary judgment on the tortious interference claim and the enjoyment of property claim, there are no actual damages. The Court thus grants Autumn Vista summary judgment on Timbercreek's claim for punitive damages.

## III. Motion for Leave to File a Second Amended Complaint

Autumn Vista seeks to drop the fraudulent inducement claim. (Dkt. 35.) Timbercreek opposes this motion, claiming Autumn Vista will

again sue to stop Timbercreek from selling the Property. Timbercreek's fears are unfounded — a future claim of fraudulent inducement by Autumn Vista would be barred by *res judicata*. *Schafler v. Indian Spring Maint. Ass'n*, 139 F. App'x 147, 150 (11th Cir. 2005) ("*Res Judicata* bars the filing of claims which were raised or could have been raised in an earlier proceeding.") (quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999)). The Court thus grants Autumn Vista's motion to file a second amended complaint, and the operative complaint no longer has the fraudulent inducement claim.

## IV.  Motion to Amend Scheduling Order

Timbercreek seeks to amend the scheduling order so that it may amend its answer to add a basis of relief — the requirement that Autumn Vista cancel the *lis pendens* Autumn Vista filed in the Superior Court of Gwinnett County. (Dkt. 46.)      Rule 16 of the Federal Rules of Civil Procedure allows courts to modify the pretrial schedule for good cause. *See* Fed R. Civ. P. 16(b)(4). Timbercreek's efforts to settle the case constitute good cause, and the Court thus grants Timbercreek's motion.

## V.    Motion to Amend Complaint

Autumn Vista seeks a declaratory judgment on whether Timbercreek owes complete indemnification for the tenant lawsuit, including punitive damages.  (*See* Dkt. 62-2.)  The Court has ruled that the indemnification agreement does not cover punitive damages. *See supra*.  And the breach of contract claims cover the other relief sought by Autumn Vista, whether Timbercreek has performed its contractual obligations.  Since the declaratory judgment claim is redundant of the breach of contract claim, the Court denies Autumn Vista's motion as futile.  *See HM Peachtree Corners I, LLC v. Panolam Indus. Int'l, Inc.*, No. 1:17-cv-1000, 2017 WL 3700304, at *2 (N.D. Ga. Aug. 28, 2017) (denying a motion to amend as futile because it was "redundant of [the] breach of contract claim") (quoting *Christman v. Walch*, 416 F. App'x 841, 844 (11th Cir. 2011)).

## VI.   Motion to Set Mediation

Autumn Vista asks the Court to set a date for mediation.  (Dkt. 70.) This motion may be moot given this order's conclusions.  The Court denies this motion but allows the parties to refile it if they believe an order setting mediation is still necessary.

## VII. Conclusion

The Court **DENIES** Autumn Vista's Motion for Summary Judgment (Dkt. 42) on the breach of the Purchase Agreement claim. The Court **GRANTS** Autumn Vista's Motion for Summary Judgment on the tortious interference, interference with enjoyment of property, and punitive damages claims. The Court **DENIES** Timbercreek's Motion for Summary Judgment (Dkt. 38) on the breach of the Purchase Agreement claim. The Court **GRANTS** Timbercreek's Motion for Summary Judgment on the materiality of the alleged breach of the Purchase Agreement. The Court **GRANTS** Autumn Vista's Motion for Leave to File a Second Amended Complaint (Dkt. 35). Autumn Vista shall file its second amended complaint within three (3) days of entry of this order on the docket. The Court **GRANTS** Timbercreek's Motion to Amend Scheduling Order (Dkt. 46). Timbercreek shall have fourteen (14) days from the date of entry of the second amended complaint on the docket to file an amended answer, affirmative and other defenses, and counterclaims. The Court **DENIES** Autumn Vista's Motion to Amend the Complaint (Dkt. 62). The Court **DENIES** Autumn Vista's Motion to Set Mediation (Dkt. 70).

**SO ORDERED** this 23rd day of August, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE